IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES                                        PLAINTIFF/RESPONDENT

V.                              No.  2:09-CR-20026
                                No.  2:10-CV-02166

SALVADOR ZARATES                                     DEFENDANT/PETITIONER

## REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the petitioner's Habeas Corpus

Petitions, *See ECF No.* 163 filed November 2, 2010, under 28 U.S.C. Section 2255.  The

Government filed its Response, *See ECF No.* 167 on November 24, 2010, and the Petitioner

filed his Reply, *See ECF No.*  171 on January 26, 2011.

### I.  Background

On March 27, 2009, Salvador Zarates (hereinafter "Zarates") was arrested by State of

Arkansas authorities on drug charges. (PSR 1, ¶¶ 7-14) On March 31, 2009, while Zarates was

being held in Arkansas State custody, a federal criminal complaint was filed against him and

Zarates was arrested by federal officials. (ECF No2. 1) On April 1, 2009, the State of Arkansas

revoked Zarates parole due to his arrest on the State drug charges and he was committed to the

Arkansas Department of Corrections. (PSR, ¶ 44) On April 13, 2009, the United States filed a

Petition and Order for Writ Habeas Corpus Ad Prosequendum requesting that the State of

Arkansas produce Zarates before this Court on May 6, 2009, and that he be returned to the State

of Arkansas at the conclusion of all federal proceedings. (ECF No. 34)

On April 22, 2009, Zarates was named in Count 7 of a seven-count Indictment in the Western District of Arkansas, Fort Smith Division. (ECF No. 35) Count 7 of the Indictment charged that on or  about March 27, 2009, the defendant did knowingly attempt to possess with intent to distribute cocaine, a Schedule II substance, in violation of Title 21 §§ 841(a)(1) and 846. (Id.)

On August 18, 2009, Zarates appeared with appointed counsel before the Honorable Robert T. Dawson for a change of plea hearing. (ECF No. 82) A written plea agreement was produced (ECF No. 83) wherein Zarates would plead guilty to Count 7 of the Indictment. Zarates' rights were explained to him and the penalties were set forth. The court expressed tentative approval of the plea agreement. A factual basis was set forth to which Zarates agreed. He then formally entered a plea of guilty to Count 7 of the Indictment. The court accepted Zarates' plea and ordered a Presentence Report ("PSR").

On November 4, 2009, the Probation Office issued Zarates' initial PSR. The PSR indicated that Zarates was on parole at the time he committed his federal offense and that his parole was revoked due to the instant offense. (PSR, ¶ 44)

The United States informed the Probation Office on November 5, 2009, that it had no objections to the PSR. Zarates notified the Probation Office on November 13, 2009, and December 10, 2009, of his concerns regarding the criminal history points assessed against him and of his belief that his guideline score would be lower. On December 11, 2009, the Probation Office issued a second PSR with addendum addressing Zarates' concerns.

On February 17, 2010, Zarates appeared for sentencing. (ECF No. 124) During the sentencing hearing, the Court asked the probation officer if she was aware of any pending State

charges and she answered "No, sir." (Sent. Tr., pg. 4) The Court then heard Zarates' objection to

how he was assessed criminal history points regarding paragraphs 38 through 40 of the PSR.

(Sent. Tr.3, pp. 5 - 8) The Court overruled Zarates' objection. Next the Court heard Zarates'

second objection which involved his calculated guidelines range. (Sent. Tr., pp. 8 - 10). The

Court overruled the objection. After recognizing Zarates' recommended sentencing guidelines

range was 151 to 188 months and considering the § 3553(a) factors, the Court proceeded to

sentence Zarates to 77 months imprisonment, 3 years supervised release, $2,500 fine with

interest waived, and $100 special assessment. (ECF No. 124; Sent. Tr., pp. 17 - 20) The 77

months imprisonment represented a 41 percent departure from the top of Zarates' recommended

guidelines sentence. Judgment was entered on February 23, 2010. (ECF No. 133).

     After sentencing, Zarates remained in Arkansas custody until April 15, 2010, when he

was paroled on his State charges and entered federal custody.

     On July 16, 2010, Zarates contacted the Warden of the Federal Correctional Complex,

Pollock, Louisiana, requesting an administrative remedy to credit him 473 days of jail credit

which he alleged should have been credited for time spent in federal custody. (See ECF No. 157,

ECF No 157-1). Zarates' request was denied by the Warden on July 27, 2010. In his denial, the

Warden stated:

> An investigation into this matter revealed that when you committed the
> instant federal offense, you subsequently violated your parole with the
> Arkansas Department of Corrections. In doing so, the State had primary
> jurisdiction over you, due to the fact that your State parole was in affect
> prior to the instant federal offense.

     Thereafter, On August 13, 2010, Zarates filed a Motion for Nunc Pro Tunc Amended

Judgment asking the Court to amend his judgment to reflect jail credit from March 27, 2009,

-3-

until April 15, 2010. (ECF No. 157) In his motion, Zarates argued that he was placed into federal custody on April 1, 2009, where he remained until April 15, 2010. The United States responded on August 19, 2010, arguing that Rule 35 of the Federal Rules of Criminal Procedure prohibited the Court from modifying Zarates' term of imprisonment and that Zarates should challenge any determinations made by the Bureau of Prisons after exhausting his administrative remedies by bringing a motion under 18 U.S.C. § 2241 in the district of his confinement. (ECF No. 158) On September 2, 2010, the Court issued its Order denying Zarates' Nunc Pro Tunc motion. (ECF No. 160).

On November 2, 2010, Zarates filed his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 163), Zarates' main claim is that his appointed counsel provided ineffective assistance because he failed to move to have his federal sentence run concurrently with his State sentence. Additionally, Zarates appears to make a claim that his counsel was also ineffective because counsel did not inform the Court that he was in federal custody and had State charges pending against him at the time of his federal sentencing.  The Petitioner's claims are without merit.

## II.  Discussion

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *See U.S. v. Swayze,*  2008 WL 859030, 8 (N.D.Iowa) (N.D.Iowa,2008) *citing United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill* v. U.S. , 368 U.S. 424 at 428;

-4-

see also *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.1996) ( "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir.1987)). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "[a]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Id. (internal quotation marks and citation omitted).

**Ineffective Assistance of Counsel:**

The Petitioner's claim is that his appointed counsel provided ineffective assistance because he (1) failed to move to have his federal sentence run concurrently with his State sentence and that (2) his counsel did not inform the Court that he was in federal custody and had State charges pending against him at the time of his federal sentencing

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). 2254. *Cox v. Wyrick,* 642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, Petitioner must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth

Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted).

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

To satisfy this "prejudice" prong, Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome." *U.S. v. Rice*, 449 F.3d 887 at 897 (internal quotations omitted). Thus, it is not sufficient for a defendant to show that the error had some "conceivable effect" on the result of the proceeding because not every error that influences a proceeding undermines the reliability of the outcome of the proceeding. *Morales v. Ault*, 476 F.3d 545 (8th Cir.2007) (citing *Odem v. Hopkins*, 382 F.3d 846, 851 (8th Cir.2004)). Additionally, actual prejudice does not exist where a petitioner, at best, suffers the mere possibility of prejudice. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996) (mere possibility does not equal actual prejudice).

Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not

-6-

affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir.1999).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

**Claim One: Incorrect information on jail credit.**

The Petitioner first contends that  "counsel was ineffective at sentencing for failing to have movant's federal sentence ran (sic) concurrently or consecutively to his state sentence pursuant to section 5G1.3 of the U.S. Sentencing Guidelines."  ECF No. 163-4, p. 4.

The Petitioner contends that "he was informed by counsel that he would receive credit for all the time he has been incarcerated from the very date he entered into the U.S. Marshal's custody."  (ECF No. 163-4, p. 5). He stated that his counsel "failed to relate to the court the circumstances surrounding the Movant's pending charges and raise any argument to this honorable court's inherent power to impose consecutive or concurrent sentences". (Id.).

Misinformation presented at sentencing alone does not justify relief pursuant to § 2255. See, *United States v. Blackwell*, 127 F.3d 947, 953-54 (10th Cir. 1997) Only where the misinformation resulted in a "complete miscarriage of justice" is a petitioner entitled to relief. *Id*. Accordingly, misinformation alone cannot constitute a fundamental defect. Only misinformation of constitutional magnitude" is cognizable under § 2255. See id. at 187, 99 S.Ct. at 2241; *United States v. Sunrhodes*, 831 F.2d 1537, 1542 (10th Cir.1987).

 The record also shows that the Petitioner entered a plea of guilty and as such is only required to be advised of the maximum and minimum sentence.  *United States v. Granados*, 168

F.3d 343, 345 (8th Cir.1999)("the law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences.").  The Plea Agreement signed by the Petitioner set forth the Maximum Penalties that the court could assess (ECF No. 83, ¶ 9).

The Bureau of Prisons has exclusive authority to compute proper credit for time served and to determine the amount of time to be served pursuant to criminal judgments. The "exclusive remedy for challenging the BOP's calculation of a federal sentence is a habeas corpus petition filed pursuant to 28 U.S.C. § 2241, directed to the United States District Court wherein the petitioner is incarcerated, and naming the warden of the federal facility as a respondent." *Rios v. Wiley*, 201 F.3d 257 (3rd Cir.2000).  The District Court informed the Petitioner of the correct procedure in its order (ECF No. 160, p. 2) dated September 2, 2010 but the Petitioner has eschewed that procedure for the current habeas action.

In response to the Petitioner claim that he was entitled to 473 days of credit the Warden at Marian Medina responded that a :

> "sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served.  Pursuant to this rule, if a prisoner is in exclusive federal custody (not under the jurisdiction of a federal writ of habeas corpus ad prosequendum) at the time of sentencing, the sentence commences on the date of imposition.  In light of applicable statute, as referenced in Bureau of Prisons policy, if the sentencing federal court does not state that your federal sentence is to run concurrent with your state sentence, your federal sentence cannot commence until you come into exclusive custody.  You were received into exclusive federal custody on April 15, 2010, the day you paroled from Arkansas Department of Corrections." (ECF No. 157-1, p. 2).

It would appear that as a result of the determination by the Bureau of Prisons that the

-8-

Petitioner is now contending that his attorney was ineffective for failure to argue that his federal sentence should have been ordered to run concurrent with his state court sentence.

Under 18 U.S.C. § 3584(a), "If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively...Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently"

According to Program Statement 5880.28, Sentence Computation Manual, (CN-03) February 14, 1997, Pages 1-31, 1 - 32, "if the court is silent as to whether terms of imprisonment imposed at the same time (emphasis added) are concurrent or consecutive, the terms run concurrently unless a statute requires that they be consecutive. If, on the other hand, multiple terms of imprisonment are imposed at different times (emphasis added) without the judge specifying whether they are to run concurrently or consecutively, they will run consecutively unless the statute specifies otherwise." *See Program Statement 5880.28, Sentence Computation Manual*, (CN-03) February 14, 1997, Pages 1-31, 1 - 32. This subsection allows the court flexibility in sentencing when multiple terms of imprisonment are imposed and codifies the rules to follow if the court remains silent. Id.

Individuals that commit a federal offense while on parole are governed by § 5G1.3(c) of the Sentencing Guidelines which states that:

> In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrent, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. 2008 U.S.S.G. § 5G1.3(c).

Application Note 3(C) states that:

> Subsection (c) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked.  Consistent with the policy set forth in Application Note 4 and subsection (f) of §7B1.3 (Revocation of Probation or Supervised Release), **the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.**

The Government argues that the sentence the Petitioner received has to run consecutively and sites the 2001 Sentencing Guidelines and *United States v. Smith*, 282 F.3d 1045, 1047-48 (8th Cir.2002); *United States v. Goldman*, 228 F.3d 942, 943-44 (8th Cir.2000) *and  U.S. v. Caldwell,*  339 F.3d 680, 681 (C.A.8 (Mo.),2003).

In November 2003, the Sentencing Commission amended § 5G1.3 to state, inter alia, that "the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation [of probation]." USSG § 5G1.3, comment. (n.3(C)) (emphasis added). The Commission explained:

> [T]he Commission recommends a consecutive sentence in this situation. This amendment also resolves a circuit conflict concerning whether the imposition of such sentence is required to be consecutive.*8 The amendment follows holdings of the Second, Third, and Tenth Circuits stating that imposition of sentence for the instant offense is not required to be consecutive to the sentence imposed upon revocation of probation.

> USSG App. C (Amendment 660, "Reason for Amendment" ¶ 2) [hereinafter "Amendment 660, ¶ 2"] (citing the Maria, Swan, and Tisdale decisions). Amendment 660, ¶ 2, now encourages district courts to impose consecutive sentences, while at the same time permitting them-in the exercise of their sound discretion-to make the federal sentence concurrent.

-10-

The Eighth Circuit recognized the change in the sentencing provision in 2004 when it stated that "assuming that the district court had the authority to order a concurrent or partially concurrent sentence in this case, the district court supplied more than adequate justification for its decision otherwise." *U.S. v. White,* 367 F.3d 968, 970 (C.A.8 (Minn.),2004). The court notes that the White case has not been referenced since its decision however the cases of U.S. v. Booker and Gall v. U.S. have been decided and it is possible that the decision may be discretionary with the court.

Even assuming that it is no longer mandated in the Eighth Circuit that such sentences run consecutively it is clear that it is the recommendation of the Sentencing Commission that any sentence for an offense committed while a defendant is on parole be run consecutive to the revocation sentence. There is no evidence to suggest that the sentencing court would not follow the recommendation of the sentencing commission in this regard. The Petitioner was a career offender who had committed the federal charges while out on parole. The Petitioner had been previously revoked in October 2002 and then in April 2009 on different state court charges. The Petitioner had a Criminal History Category of Level VI and a total offense level of 29. (PSR). The court made allowances in the sentence imposed on the Petitioner when it sentenced him below the guideline provisions. It is certainly probable that the court considered the time the Petitioner had spent in custody in imposing its sentence below the guideline provision.

In addition it does not appear that the Petitioner would be entitled to credit for

-11-

the time spent in the Arkansas Department of Corrections prior to being sentenced on the federal charge. In regards to credit for prior custody 18 U.S.C. § 3585 provides that:

(b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.  18 U.S.C.A. § 3585.

In this case the Petitioner was given credit for his time in the Arkansas Department of Corrections against his parole revocation.

**Claim Two: Silence of counsel at sentencing.**

Additionally, Zarates argues that he was prejudiced by counsel's silence at sentencing regarding the Court's inquiry as to whether there were pending charges against him. ECF No. 163-4, p. 4.  The Petitioner contends that his attorney stood silent when, at sentencing on February 17, 2010, the court inquired of the Probation Officer if he/she "was aware of any state charges that were pending".  The response was no.  In point of fact there were no state charges pending.  On April 1, 2009, the State of Arkansas had revoked Zarates parole in Sebastian County Circuit Case No.

CR 07-1340 due to his arrest on the drug charges and he was committed to the Arkansas Department of Corrections. (PSR, ¶ 44).  During the time from his parole revocation on April 1, 2009 until he was released by the Arkansas Department of Corrections on April 15, 2010 the Petitioner was an inmate of the Arkansas Department of Correction.  On April 15, 2010 he entered Federal custody.  An attorney does not render ineffective assistance by failing to pursue meritless claims. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir.1994).

There has been no showing by the Petitioner that his attorney's performance was deficient in any manner or that he was prejudiced by the actions of his attorney. Since the Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997). The Petitioner has not put forth any assertion that he wanted to go to trial only that he feels that he should receive more jail time credit.

**Evidentiary Hearing:**

Finally, Petitioner does not state grounds sufficient to require an evidentiary hearing. An evidentiary hearing on a § 2255 motion must be granted unless the motion, files and records of the case establish conclusively that the petitioner is not entitled to relief. *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000). A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible

-13-

or conclusions rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir.1998).

In the present case, even if the court accepted the Petitioner's allegations as true, the record shows that he is not entitled to the relief requested.

### I. Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2255 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 25th day of March 2011

*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE  JUDGE

-14-